IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 08-168-15 |
| | ) |
| NYAME AMOAH MENSAH | ) |

OPINION

On April 15, 2008, a grand jury returned a five-count indictment charging fifteen defendants with an international heroin distribution conspiracy. Nyame Amoah Mensah ("defendant") was charged only at Count One with conspiracy to distribute and possess with intent to distribute 1 kilogram or more of heroin. Ultimately, five of the alleged conspirators, including defendant, proceeded to trial.[1]

At trial, a co-defendant, Kofi Adusei, testified against defendant. Adusei, who had entered a plea of guilty and agreed to cooperate, testified that defendant was a courier for the conspiracy and that he had bodily transported 40 slugs of heroin into the United States from Ghana. After passing the heroin, defendant delivered it to Adusei, who arranged for its delivery from New York City to Pittsburgh. In addition to Adusei's testimony, the evidence against defendant consisted of transcripts of recorded telephone conversations between he and Adusei.

---

[1] Eight of the fifteen named defendants entered guilty pleas. The indictment was dismissed against two others upon government motion prior to trial.

Following a seven-day trial, a jury found defendant guilty of the charged offense.[2] Shortly before his scheduled sentencing hearing, defendant filed the pending motion for a new trial pursuant to Fed. R. Crim. P. 33(a) on the ground of newly discovered evidence.

The motion alleges that two inmates at the Northeast Ohio Correctional Center ("NEOCC"), where defendant was transferred to await sentencing, had notified defendant that Adusei had made statements to them indicating that defendant was not involved in the drug conspiracy. Both of those inmates, Cornelius Newbern and Alvin Thomas, submitted affidavits in support of their allegations regarding Adusei. An evidentiary hearing subsequently was held at which the court heard testimony from Newbern, Thomas, FBI Special Agent Sandra Meier and Attorney James Brink. Both parties have submitted post-hearing briefs and this matter is now ripe for resolution.

Fed. R. Crim. P. 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Before a district court may grant a new trial on the basis of newly discovered evidence, five requirements must be met: (1) the evidence must be newly discovered, *i.e.*, discovered since the trial; (2) facts must be

---

[2] The other four alleged conspirators who had proceeded to trial with defendant all were acquitted by the jury.

2

alleged from which the court may infer diligence on the part of the movant; (3) the evidence relied on must not be merely cumulative or impeaching; (4) the evidence must be material to the issues involved; and, (5) the evidence must be of such a nature that, on a new trial, it would probably produce an acquittal. United States v. Brown, 595 F.3d 498, 511 (3d Cir. 2010).

A movant seeking a new trial on the basis of newly discovered evidence bears a "heavy burden" in proving each of these requirements. Id. Moreover, if just one of the five requirements is not satisfied, a defendant's Rule 33 motion fails. United States v. Kelly, 539 F.3d 172, 182 (3d Cir. 2008). Additionally, this court must "exercise great caution in setting aside a verdict reached after fully-conducted proceedings," and particularly so where "the action has been tried before a jury." Id. (quoting United States v. Kamel, 965 F.2d 484, 493 (7th Cir. 1992)).

Here, the statements from Newbern and Thomas are material and newly discovered and the court is satisfied that neither defendant nor his counsel could have obtained the evidence through due diligence prior to trial. Evidence is not newly discovered if it was actually known or could have been known by the diligence of the defendant or his counsel. United States v. Cimera, 459 F.3d 452, 461 (3d Cir. 2006). The court does not believe that there is any way that defendant or his counsel knew, or could have known, until after the trial that either Newbern or Thomas had

3

AO 72
(Rev. 8/82)

information relating to defendant's case or to Adusei since defendant never even met either one until after his post-conviction transfer to NEOCC.

However, defendant cannot meet his heavy burden to establish the two remaining requirements for a new trial because the newly discovered evidence is merely cumulative and impeaching and it would not probably produce an acquittal upon retrial.

First, the new evidence is merely impeaching. Newbern and Thomas both testified at the evidentiary hearing that Adusei told them that defendant had "nothing to do with" the drug conspiracy and that it was defendant's brother who was involved, statements which are contrary to Adusei's trial testimony that defendant body carried 40 slugs of heroin into the United States from Ghana. These prior inconsistent statements, however, are not exculpatory in that they in no way establish that defendant was not involved. Rather, they merely are statements which would tend to impugn Adusei's credibility on the issue of defendant's involvement. See, e.g., United States v. Desivo, 288 Fed. Appx. 815, 819 (3d Cir. 2008)(statement from cell mate of government witness indicating that witness had said that much of his testimony was untrue was merely impeaching and was not basis for granting a new trial).

In addition, the statements also are cumulative. At trial, Adusei was cross-examined extensively by defendant's counsel

4

regarding identical prior inconsistent statements that Adusei initially had made to the government to the effect that it was not defendant, but defendant's brother, who was involved in the conspiracy. Adusei's comments to the government were made during the same time period that he purportedly was making similar statements to Newbern and Thomas, from the summer of 2008 to December of 2008.

It was not until July of 2009, however, when Adusei was confronted with the taped telephone conversations between him and defendant that Adusei changed his story and implicated defendant to the government. Defendant's counsel cross-examined Adusei extensively on his prior inconsistent statements to the government and the jury was fully aware of those prior inconsistent statements when it considered Adusei's credibility. Any additional statements to the same effect that Adusei may have made to other inmates at NEOCC therefore merely are cumulative to the prior inconsistent statements that he had made to the government. See, e.g., United States v. Whitfield, 215 Fed. Appx. 190, 193 (3d. Cir. 2007)(where witness was cross-examined extensively about his prior crimes and prior inconsistent statements, newly discovered prior inconsistent statement was cumulative impeachment material).

Defendant also has failed to meet his heavy burden to show that the new evidence probably would result in an acquittal on

5

retrial. Even assuming the credibility of the statements made by Thomas and Newbern, there is more than sufficient independent evidence, namely, the transcripts of the recorded phone conversations between defendant and Adusei, to support defendant's conviction notwithstanding the newly discovered impeachment evidence.

As part of its inquiry into whether newly discovered evidence probably would produce an acquittal, this court is required to make a credibility determination regarding the new evidence. Kelly, 539 F.3d at 188-90. In making this determination, the court's focus should be on whether a jury probably would reach a different result upon hearing the new evidence by taking into account all of the evidence that the jury likely would hear and consider, "including the evidence already weighed and considered by the jury in the defendant's first trial." Id. at 189.

Here, the court received the testimony of Newbern and Thomas at the evidentiary hearing which was held on defendant's motion for new trial. Based upon that testimony, although there is some reason to doubt the credibility of both, at least as to certain portions of their allegations[3], the court will assume for purposes

---

[3] For instance, Newbern testified that Adusei had stated that Adusei needed to give up a "kingpin" in order to get a plea deal with the government and that Newbern had assumed that it was defendant, when, in fact, defendant was only a courier. As to Thomas' credibility, he testified that in August of 2009 he had told his then court appointed counsel in his own criminal case, Attorney James Brink, who also represented Adusei, that Adusei had

6

of this motion that the fundamental allegations set forth by each, that Adusei had told both of them that defendant had nothing to do with the conspiracy, are credible. However, the court is convinced that, even if a jury were to believe that Adusei *told* both Newbern and Thomas that defendant had nothing to do with it, the outcome of the trial would have been no different based upon all of the other evidence the jury would be considering.

Having heard the evidence presented at defendant's trial, the court is more than satisfied that the transcripts of the recorded conversations between Adusei and defendant fully corroborate Adusei's testimony that, in addition to legal prescription medications and a birth certificate, defendant also transported heroin into the United States from Ghana, and that the recorded conversations constitute substantial evidence of defendant's guilt, notwithstanding the newly discovered impeachment evidence.

Defendant attempts to minimize the obvious detrimental impact of the recorded conversations by arguing that the transcripts of the telephone conversations are not self-explanatory and that

---

said that defendant had nothing to do with the conspiracy. However, under oath, Attorney Brink testified that this conversation never occurred. In addition, although defendant states in his brief that Thomas had "nothing to gain" by coming forward with his allegations, the court notes that Thomas in his own criminal case requested a downward departure based upon his "assistance to the court in determining the truth and veracity" of Adusei's testimony in this pending case, suggesting that Thomas in fact believed that he did have something to gain through his testimony.

7

alternative, innocent explanations for the content of the conversations exist.[4] His position is that the statements from Newbern and Thomas so undermine Adusei's credibility that a new jury would be more inclined to accept the alternative, innocent explanations behind those conversations advanced by defendant, since it was Adusei's testimony alone which gave the conversations the meaning attributed to them by the government, and it was Adusei who refuted the alternative explanations advanced by defendant at trial.

However, neither Adusei's testimony nor the recorded conversations can be viewed in isolation. Considered together, the transcripts fully corroborate Adusei's testimony, and, in fact, the conversations would make absolutely no sense if Adusei's testimony that defendant brought back heroin from Ghana was not accurate and all he brought back were legal medications and a birth certificate. Moreover, defendant's alternative innocent explanations for the recorded conversations already were argued to, and rejected by, the jury, and any statement that Adusei purportedly made to others indicating that defendant brought back only medicine would be inconsistent with the tape recordings, which clearly establish that defendant and Adusei were discussing something in addition to legal medicine.

---

[4] Defendant argued to the jury that the conversations related solely to legal prescription medications and a birth certificate that he brought back from Ghana for Adusei.

8

As already found, the sole benefit of the newly discovered evidence would be to impeach Adusei's credibility through his prior inconsistent statements to Thomas and Newbern. However, Adusei already was extensively impeached at defendant's trial through identical prior inconsistent statements that Adusei had made to the government. Despite being aware of Adusei's initial statements to the government that defendant had nothing to do with the conspiracy, the jury nevertheless found his trial testimony to be credible in light of the recorded conversations, which fully corroborated his testimony against defendant. The court is satisfied that even with the additional impeachment evidence from Thomas and Newbern, that a jury upon a retrial would reach the same verdict.

In determining whether newly discovered evidence would probably have produced an acquittal, for purposes of a new trial motion, this court properly may assess whether there was sufficient independent evidence to support a conviction, instead of whether the new evidence was likely to create a reasonable doubt. United States v. Saada, 212 F.3d 210, 217 n. 6 (3d. Cir. 2000).

Here, the transcripts of the recorded telephone conversations between Adusei and defendant provide sufficient independent evidence to support defendant's conviction, and defendant has failed to meet his heavy burden of showing that the newly

9

discovered was not merely cumulative or impeaching or that it likely would produce an acquittal upon a retrial. Accordingly, a new trial is not warranted in this case and defendant's motion will be denied.

An appropriate order will follow.

Date: August 30, 2010

/s/ Gustave Diamond
Gustave Diamond
United States District Judge

cc: Constance M. Bowden
Assistant U.S. Attorney

Craig A. Sopin, Esq.
601 Walnut Street
The Curtis Center, Suite 160-West
Philadelphia, PA 19106